[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED JUNE 28, 1996
Plaintiff Glenn A. Tuttle appeals the decision of the defendant commissioner of motor vehicles suspending the plaintiff's motor vehicle operator's license for a period of one year. The commissioner acted pursuant to General Statutes §14-227b on the basis that the plaintiff refused to submit to a test of the alcohol content of his blood after being arrested on a charge of operating a vehicle while under the influence of alcohol. The plaintiff appeals pursuant to § 4-183. The court finds the issues in favor of the defendant commissioner.
The essential facts in the case are not in dispute and are fully reflected in the record. At 11:28 P.M. on September 14, 1995, the plaintiff was operating his vehicle on Washington Street in Vernon. At that time, he collided with another vehicle, coming to a stop a short distance away. The police apprehended him there and, after determining probable cause, arrested him, charging him with operating under the influence of liquor in violation of General Statutes § 14-227a, as well as an infraction.
Just before 12:58 A.M. on September 15, 1995, approximately one and one-half hours after the plaintiff was operating his vehicle, the police requested that he submit to a test of the alcohol content of his blood, using the intoximeter machine at the Vernon police headquarters. The plaintiff agreed and the police attempted to administer the test. The machine malfunctioned, however, and the test was aborted at that time. At 2:12 A.M., the police again attempted to administer the test. Again the plaintiff agreed, and again the machine malfunctioned. The police then informed the plaintiff that they would take him to the Manchester police department, where another machine was available. At that point, approximately two hours and forty-five minutes after he last operated his vehicle, the plaintiff stated that he would refuse further testing.
Based on those facts, the hearing officer concluded that § 14-227b required the suspension of the plaintiffs license for refusing to submit to a test, and he rendered the final decision in this case accordingly. CT Page 5016
In his brief on appeal, the plaintiff advances essentially two arguments: (1) that the plaintiffs actions as described in the police report do not amount to a refusal to submit to a test within the meaning of § 14-227b; and (2), in the alternative, that the police report was erroneously admitted in evidence, and without it, there was insufficient evidence to support the hearing officer's decision.
The plaintiffs first argument is that § 14-227b, as amended by Public Act 94-189, does not permit the commissioner to suspend a person's license for refusal to submit to a test in a case where the police requested the test more than two hours after the person was operating a vehicle. This is, in the court's view, the primary issue raised in this appeal, and since it presents itself so frequently in test refusal cases, it is appropriate to address it in some depth.
The court's analysis of the issue begins with an historical review of General Statutes § 14-227b. Prior to 1989, the statute authorized the commissioner to suspend the license of a person arrested for drunk driving, as an administrative sanction, only if the person refused to submit to a chemical test of the alcohol level of his blood. If the person submitted to a test, regardless of the results, the statute did not provide for administrative suspension by the commissioner, although the results could be used as evidence in a trial of the criminal charge brought under § 14-227a.
In 1989, the legislature substantially amended § 14-227b
by adding to it the so-called "per se" provisions. These additional provisions required the commissioner to suspend the license of a person arrested for drunk driving if the person submitted to a test and the results showed that the alcohol content of his or her blood exceeded the legal level at the time the person was operating a vehicle. The "per se" provisions were in addition to the earlier provisions requiring suspension for refusal to submit to a test, which were retained in the same statute.
The "per se" provisions have been amended several times since their original enactment in 1989, so that they now provide that proof of the alcohol content of the person's blood at the time of operation of a vehicle is not necessary. Administrative suspension of the license for failing the test is now authorized if, but only if, the test was commenced within two hours of CT Page 5017 operation. The criminal statute, § 14-227a, has also been amended to provide that the results of the chemical test may be admitted at the criminal trial if, but only if, the test was commenced within two hours of operation. The timing of the chemical test, therefore, is now absolutely crucial in determining whether the test results may be admitted in the criminal trial or be used as a basis for administrative suspension of the person's license by the commissioner.
While the legislature was enacting the "per se" provisions and subsequently amending them, it left the provisions regarding test refusal unchanged. That is to say, for many years prior to 1989 and continuing to the present time, the commissioner has been required to suspend the license of a person arrested for drunk driving who refuses to submit to a chemical test of the alcohol content of his or her blood. The basis of the obligation to submit to a test at the request of the police is found in subsection (a) of § 14-227b, which has never been changed and which provides "Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . ."
Since there were no provisions relating to the results of a chemical test in the statute prior to 1989, the original obligation to submit to a test was obviously not linked in any way to any such provisions. Then, when the statute was amended in 1989 to add the original "per se" provisions, the legislature did not link those new provisions to the existing provisions relating to refusal to take the test. And finally, when the statute was amended in 1993 and 1994 by inserting the two-hour time limitation for administering the test, the legislature did not impose any time limitation or make any other changes in the obligation to submit to a test or in the requirement that the commissioner suspend the license of a person who refused to do so.
Based on the legislative history of § 14-227b, as summarized above, the court concludes that the obligation of a person who operates a motor vehicle in this state to submit to a chemical test, in accordance with the provisions of that statute, is independent of the "per se" provisions in that statute relating to the timing of the test and the test results. Specifically, the two-hour time limitation for administering the test to a person who has agreed to take it is of critical significance in many respects, but it is not a limitation on the CT Page 5018 general obligation of all motor vehicle operators in the state to submit to a test when requested by the police. It follows that the commissioner is required to suspend the license of an operator who has been arrested for drunk driving and who refuses to be tested, even if the police request the test after the two-hour time period required by the "per se" provisions of the statute.
The court's conclusions in this regard find support in other provisions of the statutes. Although § 14-227a(c) provides that evidence of test results may be admitted in a criminal trial for violation of § 14-227a(a) only if the tests were commenced within two hours after operation of the vehicle, evidence of the defendant's refusal to take the test is admissible without regard to the time when such test was requested. General Statutes §§ 14-227a(f) and 14-227b(b). These sections of the statutes, therefore, support the court's conclusion that the provisions relating to test refusal are independent of those relating to test results.
The court's decision on this issue does not relieve the police of the obligation to act in a reasonable manner so as not to infringe upon the civil rights of those whom they arrest for drunk driving. One of the statutory conditions of the right of the police to request a chemical test is that the person must have been legally arrested. This means, in the court's view, that the request for the test must be made in connection with the arrest on the drunk-driving charge and while the person is lawfully in the custody or control of the police as a result of that arrest. It is not necessary, in test refusal cases, to show that the request was made within two hours after the person was operating the vehicle, but it must have been made within a reasonable time after the arrest, considering all of the circumstances, including the availability of the testing devices and the physical condition of the person arrested. The request must not be made for the sole purpose of harassing or intimidating the person arrested. Refusal to comply with an unreasonable or illegal request would not be grounds for license suspension under § 14-227b.
Applying the above principles to the present case, the court concludes that the request by the police that the plaintiff accompany them to the adjoining town of Manchester to be tested, more than two hours after he was operating a vehicle, was not unreasonable or illegal under all of the circumstances. The CT Page 5019 Vernon police had lawfully arrested the plaintiff on the drunk driving charge; he was still lawfully in their custody in connection with that arrest; the request that the plaintiff refused was made about two and one-half hours after the arrest; the reason for the delay was that the testing device at the Vernon police headquarters was not functioning properly; and there is no evidence in the record that the police were solely intent on harassing or intimidating the plaintiff. Based on these facts, the commissioner acted correctly in suspending the plaintiffs license.
The plaintiff also argues that the evidence in the record does not support the hearing officer's finding that he in fact refused to submit to a test. In this regard, the plaintiff points to the undisputed fact that he agreed to take the test at the Vernon headquarters when the police first requested him to do so. This argument overlooks the fact, equally undisputed, that the plaintiff refused to cooperate with the police when the failure of the Vernon testing device necessitated going to Manchester. The hearing officer could reasonably find, under these circumstances, that the plaintiffs refusal to go along constituted a refusal to be tested.
The plaintiff's final argument in this appeal is that the hearing officer erroneously admitted in evidence the written report of the police officer who arrested him. The basis of this argument is that the report indicates that the person who witnessed the plaintiff s refusal, in addition to the arresting police officer, was the officer who was attempting to administer the test. That officer, Sergeant Miffitt of the Vernon Police Department, also signed the A-44 form as the witness. The plaintiff argues that § 14-227b requires that the form be "endorsed by a third person who witnessed such refusal," and that the "third person" cannot be a police officer who was attempting to administer the test. The court disagrees.
The plaintiff accurately quotes the relevant statutory provision concerning endorsement of the arresting officer's report by a third-person witness. But that statute does not disqualify another police officer from serving as the witness merely because that officer was also attempting to administer the test. Indeed, he may be the best witness of the event. The term "third person" simply means another person in addition to the plaintiff and the arresting officer. The hearing officer correctly admitted the A-44 form and attachments in evidence. CT Page 5020
For all of the above reasons, the decision of the hearing officer and the commissioner must be affirmed. The plaintiffs appeal is, therefore, dismissed.
MALONEY, J.